891 So.2d 492 (2004)
Suzanne S. HAM, Petitioner,
v.
Scott Ryan DUNMIRE, et al., Respondents.
No. SC03-2038.
Supreme Court of Florida.
December 23, 2004.
*494 Richard P. Warfield, Pensacola, FL, for Petitioner.
Bruce C. Fehr of Vernis and Bowling, Pensacola, FL, for Respondent.
LEWIS, J.
We have for review the decision in Ham v. Dunmire, 855 So.2d 1238 (Fla. 1st DCA 2003), which certified conflict with the Third District Court of Appeal's decisions in Marin v. Batista, 639 So.2d 630 (Fla. 3d DCA 1994), Dave's Aluminum Siding, Inc. v. C & M Ventures, 582 So.2d 147 (Fla. 3d DCA 1991), and United States Fidelity & Guaranty Co. v. Herr, 539 So.2d 542 (Fla. 3d DCA 1989). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

BACKGROUND AND MATERIAL FACTS
The instant action arises from the decision of the First District Court of Appeal which affirmed the dismissal with prejudice entered by the trial court with regard to Ham's personal injury action against Scott Dunmire and All American Termite and Pest Control, Inc., (collectively, "All American"). See Ham, 855 So.2d at 1238. In 1999, Suzanne Ham initiated the underlying action seeking the recovery of damages for the injuries she suffered when the vehicle she was driving was rear-ended by an All American vehicle driven by Dunmire. This typical personal injury action was rendered even more basic by All American's admitted negligence in causing the accident as alleged in Ham's complaint, leaving the issues of causation and damages in contention.
After Ham initiated the action in November 1999, the defendants did not respond, and in April of 2000, Ham submitted a motion for default demonstrating that All American had failed to serve or file any document or pleading in the case as required. A default was entered and it was not until February 2001 that All American moved to vacate the default and filed two supporting affidavits asserting that the respondents' failure to file required pleadings was due to inadvertence and mistake.[1] A jury trial was set for September 30, 2002, to address the issues of causation and the extent and nature of the damages claimed by Ham. In the order *495 setting the case for trial, the trial court also set deadlines for the exchange of witness lists and proposed exhibits, and for the close of all discovery.
Discovery proceeded between the parties. Ham produced documents upon the request of All American, answered All American's first set of interrogatories, and Ham, herself, submitted to deposition. Depositions were completed, health care providers were identified, and subpoenas for medical records were issued. However, at some point in the fall of 2002, Ham failed to comply with a single discovery order. She failed to timely respond to All American's second set of update interrogatories, did not provide a formal witness list of the witnesses already disclosed during discovery, and allegedly did not appear at a meeting scheduled with opposing counsel to review prospective trial exhibits.[2] As a result of these alleged discovery infractions, All American submitted a motion for sanctions to the trial court.
After a brief unrecorded telephonic hearing on All American's motion, the trial court issued a written order dismissing the action with prejudice based upon Ham's violation of two court orders: one requiring the furnishing of a witness list and the other requiring Ham to answer All American's second set of update interrogatories. Prior to dismissal of the action with prejudice, there were no previous sanctions or discovery violations and no consideration as to whether any prejudice had occurred. In a brief opinion, the district court affirmed the dismissal, despite record evidence demonstrating that Ham's counsel was wholly responsible for failure to comply with the trial court's discovery orders. Noting that "the party herself was in no way at fault" for the discovery violation, the district court certified conflict with the Third District's decisions in Marin, Dave's Aluminum Siding, and Herr.

ANALYSIS
It is well settled that determining sanctions for discovery violations is committed to the discretion of the trial court, and will not be disturbed upon appeal absent an abuse of the sound exercise of that discretion. See Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983). Reviewing courts apply a "reasonableness test" to determine if the trial court has abused its discretion, which provides that if reasonable people could differ as to the propriety of the trial court's action, the action is not unreasonable, and no abuse of discretion has occurred. See id. (citing Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980)). While sanctions are within a trial court's discretion, it is also well established that dismissing an action for failure to comply with orders compelling discovery is "the most severe of all sanctions which should be employed only in extreme circumstances." Mercer, 443 So.2d at 946. In Mercer, this Court held that "[a] deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness." Id. (citation omitted).
The dismissal of an action based on the violation of a discovery order will constitute an abuse of discretion where the trial court fails to make express written findings of fact supporting the conclusion that the failure to obey the court order demonstrated willful or deliberate disregard. *496 See Commonwealth Fed. Savings & Loan Ass'n v. Tubero, 569 So.2d 1271 (Fla.1990). Express findings are required to ensure that the trial judge has consciously determined that the failure was more than a mistake, neglect, or inadvertence, and to assist the reviewing court to the extent the record is susceptible to more than one interpretation. See id. at 1273. While no "magic words" are required, the trial court must make a "finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard." Id.
Moreover, to ensure that a litigant is not unduly punished for failures of counsel, the trial court must consider whether dismissal with prejudice is warranted. In 1994, this Court issued Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993) (as clarified Jan. 13, 1994), in which we stated that a dismissal "based solely on the attorney's neglect" in a manner that unduly punishes the litigant "espouses a policy that this Court does not wish to promote." Id. at 818. We articulated a test identifying six factors pertinent in the determination of whether a dismissal with prejudice is a warranted response to an attorney's behavior. These factors require a trial court to consider:
1) whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for noncompliance; and 6) whether the delay created significant problems of judicial administration.
Id."Upon consideration of these factors, if a sanction less severe than dismissal with prejudice appears to be a viable alternative, the trial court should employ such an alternative." Id. The Kozel Court acknowledged that the purpose of the Florida Rules of Civil Procedure is to encourage the orderly movement of litigation, and that such purpose "usually can be accomplished by the imposition of a sanction that is less harsh than dismissal and that is directed toward the person responsible." Id.
Ham supports her position with the decisions of several district courts of appeal that have interpreted Kozel as rendering misconduct on the part of the litigant himself or herself a prerequisite for dismissal. Indeed, courts in at least three appellate districts have interpreted Kozel as requiring a litigant's personal involvement to justify dismissal. In Schlitt v. Currier, 763 So.2d 491 (Fla. 4th DCA 2000), the Fourth District Court of Appeal reversed an order of dismissal resulting from the plaintiff's numerous discovery violations and failures to file responsive pleadings. See id. at 492. The district court relayed that the conduct of plaintiff's counsel resulted in thirteen motions to compel (which were consistently granted), the imposition of monetary sanctions on three occasions, and several court orders threatening dismissal or default prior to the final order dismissing the complaint and entering a default judgment on the counterclaim. See id. After obtaining new counsel, the plaintiff moved to set aside the trial court's orders and submitted an affidavit stating that he had no knowledge of the attorney's handling of the matter, the trial court's orders, and the imposition of sanctions. See id. Acknowledging that courts in the district had interpreted Kozel as precluding dismissal or default absent a showing of client participation in the misconduct, the district court remanded the case for an *497 evidentiary hearing to determine whether the plaintiff knew of the attorney's conduct, and if so, whether the actions were willful and deliberate. See id. at 493. The facts in Schlitt were far more egregious than those we consider here.
The Second District Court of Appeal has reached the same conclusion as that of the Fourth District. In Elder v. Norton, 711 So.2d 586 (Fla. 2d DCA 1998), the district court reversed an order of dismissal emanating from a four-year history of discovery abuses on the part of plaintiff's counsel. See id. at 587. The district court determined that the sanction of dismissal was far too drastic in the absence of evidence "demonstrat[ing] that Elder ha[d] played an active role in abusing the discovery process." Id. The district court closed by stating, "We see no utility in punishing a faultless plaintiff when his or her attorney is solely responsible for the abusive conduct." Id. Again, the behavior in Elder was far different than the facts exposed here.
While not as explicitly, the Third District has also interpreted Kozel as requiring litigant involvement in the misconduct to justify dismissal. In Marin v. Batista, 639 So.2d 630 (Fla. 3d DCA 1994), the district court reversed a trial court order dismissing an action due to misconduct on the part of plaintiff's counsel with respect to "speedy and fair" resolution of the litigation. There, in a very brief opinion, the Third District determined, "[S]ince the record reflects absolutely no malfeasance on the part of the appellant, we find that the trial court abused its discretion by dismissing the appellant's case." Id. at 630 (citing Dave's Aluminum Siding, Herr, and Beauchamp v. Collins, 500 So.2d 294 (Fla. 3d DCA 1986)). The district court below certified conflict with the Third District's decisions in Marin, Dave's Aluminum,[3] and Herr in holding that "[a]lthough the party herself was in no way at fault, we affirm the judgment of dismissal, certifying conflict with the Third District on this point." Ham, 855 So.2d at 1238.
We reiterate that the interests of justice in this state will not tolerate the imposition of sanctions that punish litigants too harshly for the failures of counsel. We nonetheless maintain that the litigant's involvement in discovery violations or other misconduct is not the exclusive factor but is just one of the factors to be weighed in assessing whether dismissal is the appropriate sanction. Indeed, the fact that the Kozel Court articulated six factors to weigh in the sanction determination, including but not limited to the litigant's misconduct, belies the conclusion that litigant malfeasance is the exclusive and deciding factor. The text of the Kozel decision does not indicate that litigant involvement should have a totally preemptive position over the other five factors, and such was not this Court's intent. Although extremely important, it cannot be the sole factor if we are to properly administer a smooth flowing system to resolve disputes.
To the contrary, this Court has long recognized the existence of circumstances where it may be appropriate to dismiss a litigant's action based upon an attorney's neglect. See Beasley v. Girten, 61 So.2d 179, 181 (Fla.1952); see also Johnson v. Landmark First Nat'l Bank, 415 So.2d 161 (Fla. 4th DCA 1982). In *498 Beasley, this Court recognized that the interests of justice may support a dismissal with prejudice for a "persistent refusal" to comply with court orders. See Beasley, 61 So.2d at 181; see also Johnson, 415 So.2d at 162 (affirming an order dismissing an action resulting from the plaintiff's attorney's failure to appear at various hearings and to comply with multiple trial court orders). Precluding dismissal in those cases with extensive misbehavior even where the client is not involved in the misconduct would fail to recognize the principles of agency underlying attorney-client relationships, and may not serve the goal and public interest of an orderly flow of cases through the judicial process. While not at all optimal, a party who is subject to a dismissal or default judgment due to the actions of counsel would have some recourse in the form of a legal malpractice claim against his or her attorney, but such only produces a multiplication of litigation and is not an acceptable alternative. Therefore, because we hold that there may be circumstances involving such misbehavior by counsel in which dismissal is appropriate even absent the litigant's involvement in an attorney's misconduct, we must reject Ham's contention that her lack of personal involvement in the discovery infractions at issue alone precludes a dismissal of her personal injury action.
This determination does not, however, end our analysis in the instant matter because the sanction of dismissal in all cases must be a reasonable response to the discovery infractions committed. Although a trial court "unquestionably has power to discipline counsel" for violating court orders, an action should not be dismissed when the malfeasance can be adequately addressed through the imposition of a contempt citation or lesser degree of punishment directly on counsel. See Beasley, 61 So.2d at 180-81. This principle was properly applied in Clay v. City of Margate, 546 So.2d 434 (Fla. 4th DCA 1989), where the Fourth District reversed a trial court order dismissing an action due to the plaintiff's untimely filing of a response to a motion for a more definite statement. See id. at 435. The district court reversed the trial court's action, determining that the record was devoid of evidence showing that the failure to respond was a deliberate and contumacious disregard of the court's authority, and concluding that a lesser sanction directed to the attorney would have vindicated the purpose of rules of civil procedure, namely to promote the orderly movement of litigation through the courts. See id. at 435-36.
The record in the instant matter does not support the trial court's decision to dismiss Ham's action. The record shows that Ham filed the complaint in 1999 and faithfully prosecuted the claim for a period of two years. See Clay, 546 So.2d at 435 (noting that plaintiff had actively litigated the case for over a year and a half prior to the untimely response, and had met court-imposed deadlines in the past). In fact, in April of 2000, it was Ham who submitted a motion for default alleging that the corporate defendant, All American, had failed to comply with the rules of procedure and had not served or filed any document in the case as required. A default was entered against All American, which the trial court subsequently set aside.
While it is true that, despite her initial, diligent prosecution of the claim, Ham ultimately violated court orders pertaining to discovery, examination of the record and the circumstances surrounding these failures plainly reveals that they did not warrant dismissal of Ham's action with prejudice. As was clear and as All American conceded in argument before this Court, the second set of interrogatories were *499 merely "update interrogatories" intended only to maintain the currency of the information provided by Ham in her answers to the first set of interrogatories. Moreover, the record reveals that Ham actually answered the second set of interrogatories prior to the telephone hearing on All American's motion for sanctions. Thus, the discovery violations at issue in this case boil down to the untimely, but ultimately completed, update interrogatory responses, an asserted failure to submit a formal witness list thirty days prior to the trial date, and an apparent problem with the exchange of prospective trial exhibits.
This Court understands and agrees that trial courts must be permitted to exercise sanctions as a means to discourage stonewalling between opposing counsel and assure compliance with court orders. However, dismissal of an action is unwarranted in a case, such as this, where more appropriate sanctions were available. In that regard, Ham's failure to file a formal witness list may have been adequately addressed by the trial court precluding her from examining at trial any surprise undisclosed witness. That was the sanction we expressly approved in Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), where we held that a trial court could properly exclude the testimony of a surprise witness whose name had not been previously disclosed or listed in accordance with a pretrial order. See id. at 1314. A similar sanction may have been appropriate for Ham's failure to exchange trial exhibits.
Moreover, dismissal is far too extreme as a sanction in those cases where discovery violations have absolutely no prejudice to the opposing party. See id. at 1314 (stating that the trial court's discretion "must not be exercised blindly," instead it should be "guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party"); see also Gomez-Bonilla v. Apollo Ship Chandlers, 650 So.2d 116, 118 (Fla. 3d DCA 1995). The Third District's decision in Beauchamp v. Collins, 500 So.2d 294 (Fla. 3d DCA 1986), is instructive. There, the district court reversed an order of dismissal determining that the defendant had not been prejudiced by plaintiff's late-filed interrogatory responses where the plaintiff had complied with defendant's other discovery requests well in advance of trial, produced requested documents, and underwent various medical exams, and where the defendant deposed the plaintiff's physicians and had access to her medical records. See id. at 295-96. As in Beauchamp, Ham complied with numerous discovery requests from All American. All American received copies of Ham's medical records from numerous physicians and several pharmacies and deposed Ham as well as several of her health care providers. Clearly, the failings of Ham's counsel did not prevent All American from moving forward with discovery, nor was anything hidden. The prejudice determination is further impacted by the relative simplicity of the case. All American did not contest negligence in causing the accident as alleged in Ham's complaint, and the jury trial was limited to the issues of causation and the extent and nature of Ham's damages. This is simply not a case involving a protracted history of discovery abuses, numerous motions to compel, prior sanctions by the trial court, patent prejudice to the opposing party, or other circumstances that would in any way warrant imposition of the ultimate sanction of dismissal.
It is imperative that trial courts strike the appropriate balance between the severity of the infraction and the impact of the sanction when exercising their discretion to discipline parties to an action. The factors articulated in Kozel provide a *500 framework for achieving that balance. Neither the trial court nor the district court reviewed All American's motion for sanctions in accordance with the factors outlined in Kozel. Nor does it appear that they considered whether the purposes of the rules of civil procedure would have been vindicated through imposition of a lesser sanction. The trial court's failure to consider the Kozel factors in determining whether dismissal was appropriate is, by itself, a basis for remand for application of the correct standard. See Warren v. Shands Teaching Hosp. & Clinics, Inc., 700 So.2d 702, 705 (Fla. 1st DCA 1997) (remanding to the trial court for consideration in light of the Kozel factors of whether good cause existed for serving complaint outside of the 120-day time period). We instruct the trial court to consider the Kozel factors upon remand in determining what, if any, sanctions are appropriate for the discovery infractions at issue.
While unnecessary to the disposition of the instant matter, we address other errors of law raised by Ham to ensure clarity in this important area of the law. Ham argues that the trial court abused its discretion, in part, by not conducting an evidentiary hearing prior to dismissing the case and prior to denying her motion for rehearing. Neither argument can be sustained. As a threshold matter, the trial court did conduct a telephonic hearing on All American's motion for sanctions. According to the trial court, both parties "elected" to attend the hearing by telephone. Ham does not challenge that statement, but contends that the telephonic hearing was insufficient because it was too short (ten to fifteen minutes), and because no witness testimony or evidence was admitted. Despite this contention, Ham cites no caselaw in support of the proposition that a trial court must conduct an evidentiary hearing prior to dismissing a case. Neither Mercer nor Tubero, which together define the parameters of the trial court's discretion in dismissing an action as a sanction for noncompliance with trial court orders, require a complete formal evidentiary hearing.
Ham also argues that the trial court abused its discretion in dismissing the action because the trial judge failed to make any findings of fact prior to dismissing the action at the close of the telephonic hearing. The record does not contain a transcript of the telephonic hearing, rendering it impossible to review the trial court's oral pronouncement. Tubero may not require oral findings of fact, but it assumes the trial court will generate a written order that complies with the dictates of that case. Furthermore, the written order in the instant matter at least facially complies with the dictates of Tubero. In the order dismissing the action, the trial court briefly described the three discovery violations and found with regard to each that the petitioner had "willfully and inexcusably" failed to comply with its orders. It is argued that these were added to the order by counsel although never discussed by the trial judge. Unfortunately, this is the precise reason parties should attend hearings and have court reporters present. Although costly, it is counsel's only protection for an accurate record.
While the order dismissing the action provides very scant factual context regarding the discovery violations, the trial court attempted to articulate additional support for its findings in its order denying Ham's motion for rehearing.[4] According to the *501 trial court, Ham received notice that dismissal was a potential sanction for failure to comply with discovery orders both from All American's motion for sanctions, which requested dismissal as potential relief, and in the trial court's pretrial order, which specifically stated that failure to comply with the dates and procedures might result in dismissal. The trial judge indicated that he decided to dismiss the action after "having received the statements and arguments of counsel and having reviewed the court file." On this basis, the trial court found:
Despite being aware of this Court's requirements and the possible sanctions for noncompliance, the Plaintiff failed to not only file the requisite witness list on or before September 3rd, 2002, she failed to do so after receipt of the Defendants' motion or prior to the hearing on September 26th. Additionally, despite this Court's entry of an Order on Defendants' motion to compel on September 6, 2002, the Plaintiff still willfully and inexcusably failed to answer the Defendants' second interrogatories filed with the Court on May 16, 2002. Lastly, though Plaintiff's counsel presented a different version, this Court accepted the defense counsel's version that Plaintiff's counsel failed to show up at a scheduled meeting to review each other's exhibits as required by the pretrial order and that he had failed to respond to the Defendants' counsel's request for a list of those exhibits which was made by letter dated September 16, 2002, and attached as Exhibit D to the Defendants' motion.
Thus, the trial court's order may be slightly distinguished from those found to violate Tubero because it did provide at least some reasoning underlying its findings, see Boca Casino Cruises, Inc. v. Monte Carlo Cruise Concessions, Inc., 760 So.2d 281 (Fla. 4th DCA 2000) (reversing order of dismissal that failed to provide any reasoning), and made the requisite finding of willfulness or deliberateness. See Kelley v. Schmidt, 613 So.2d 918 (Fla. 5th DCA 1993) (determining that a finding that defendant's violations were inexcusable, continuing, and repeated was not tantamount to a finding of willfulness or deliberateness). Indeed, in Marr v. State Department of Transportation, 614 So.2d 619 (Fla. 2d DCA 1993), the Second District determined that an order similar to that issued in the instant case complied with the requirements of Tubero in that it listed the discovery violations and concluded that the violations were willful and constituted a deliberate and contumacious disregard of the court's discovery orders. See id. at 620.

CONCLUSION
For the reasons stated herein, we quash the district court's affirmance of the trial court order dismissing the case with prejudice. Further, we remand the case to the district court with instructions to remand to the trial court for a determination of what sanctions, short of dismissal, are appropriate for the discovery violations in this matter. Finally, we disapprove of the district court decisions in Schlitt v. Currier, 763 So.2d 491 (Fla. 4th DCA 2000), Elder v. Norton, 711 So.2d 586 (Fla. 2d DCA 1998), Marin v. Batista, 639 So.2d 630 (Fla. 3d DCA 1994), and United States Fidelity & Guaranty Co. v. Herr, 539 So.2d 542 (Fla. 3d DCA 1989), to the extent they stand for the proposition that litigant involvement in violating court orders constitutes a prerequisite for imposing *502 the sanction of dismissal with prejudice. The Kozel criteria with an emphasis on whether prejudice has occurred control.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, and CANTERO, JJ., concur.
BELL, J., recused.
NOTES
[1] An employee of All American Pest Control asserted that she mistakenly believed that a copy of the summons and complaint had been delivered to the insurance carrier, and that the defense process was underway. Dunmire proffered that All American informed him that no further action was required on his part with regard to the claim.
[2] Although Ham presented a different version of events with regard to the scheduling of the meeting, the trial court accepted All American's version in its decision dismissing the action with prejudice.
[3] It is unclear why the Marin court cited Dave's Aluminum because, unlike Marin, that decision makes no distinction between an attorney's misconduct and that of the client. While the decision below conflicts with Marin and Herr, it does not conflict with Dave's Aluminum.
[4] Given that this Court instituted the requirement for an express written finding of willful or deliberate conduct in part to facilitate appellate review of sanctions of dismissal, see Tubero, 569 So.2d at 1273, it is of little consequence that the trial court articulated its rationale in greater detail in the order denying the motion for rehearing than in the order dismissing the action.