EMAS, J.
Craig Toll (“Toll”) appeals from a final Order Granting Renewed Motion for Default and a Final Default Judgment entered against him on the basis of discovery violations. For the reasons that follow, we vacate the Final Default Judgment and remand for an evidentiary hearing.

FACTS AND BACKGROUND

Chris Korge, the plaintiff below, filed an eight-count complaint against Toll, as well as Claudio Osorio, Amarilis Osorio, and InnoVida Holdings, LLC, (collectively the “Defendants”), seeking damages and in-junctive relief. Toll was InnoVida’s Chief Financial Officer. Claudio Osorio was the Chief Executive Officer, chairman, and eighty-five percent owner of InnoVida. Amarailis Osorio is Claudio’s wife and was a director/officer of InnoVida.
Korge’s claims arise from his purchase of shares in InnoVida. Korge alleged, inter alia, that he made substantial cash investments in InnoVida which were fraudulently induced and subsequently misappropriated by the Defendants. The complaint alleged causes of action for, inter alia, fraudulent misrepresentation, negligent misrepresentation, and conversion. Korge also sought the appointment of a receiver to oversee InnoVida.
Together with the complaint, Korge filed a motion to expedite discovery, requests for production, and an emergency motion for status conference. At a hearing held on September 27, 2010, the trial court granted Korge’s request for expedited discovery and ordered Defendants to respond to the requests for production by October 7, 2010. The court also ordered Toll and Claudio Osorio (“Osorio”) to submit to deposition by October 18, 2010.
Korge set the Toll and Osorio depositions for October 14 and 15, 2010. On October 8, 2010, counsel for Toll and Oso-rio[1] advised Korge that neither Toll nor Osorio would appear for deposition, prompting Korge to file a motion to compel. On October 12, 2010, the court held a hearing on the issue, as well as on Defendants’ failure to timely produce documents. Toll was not in attendance at the October 12 hearing. The court ordered Toll and Osorio to appear for depositions, noting they would be subject to a show cause order if they did not appear. The court also ordered Defendants to produce all responsive documents, including actual bank statements allegedly confirming the location and existence of approximately $39 million being held in the Cayman Islands.
Toll and Osorio failed to appear for their scheduled depositions, and Korge sought the issuance of a show cause order. The court granted the motion and ordered that Toll and Osorio personally appear before the court on October 18, 2010 to each show cause why they should not be held in contempt or be subject to sanctions. Neither Toll nor Osorio appeared at the show cause hearing, though their attorney attended the hearing, advising the court that Toll was traveling out of the country during the date of his previously-scheduled deposition.[2] The depositions were rescheduled for October 21 and 27, 2010.
*885 The court held another hearing on October 19, 2010 on Korge’s motion to compel responses to request for production and on Defendants’ objections to the requests. The court overruled Defendants’ objections to Korge’s request for production and ordered Defendants to immediately produce all responsive documents, including InnoVida’s check registers, bank statements and credit card statements. Though Defendants produced some documents the following day, they did not produce any records evidencing the company’s supposed cash position.
Toll appeared for his deposition on October 21, 2010 and testified as follows: (i) he had not been out of the country during his prior scheduled deposition, and in fact had no knowledge of the court order requiring him to appear for it; (ii) he was unaware that the attorney representing him and Osorio represented to the court that Toll did not appear for such deposition because he was out of the country; (iii) he had never before seen any of the court’s prior orders pertaining to depositions, discovery’ or attendance at hearings; (iv) the first time he met his attorney and discussed anything about this case was on October 20, 2010 — the day prior to his deposition but subsequent to several of the court’s orders; and (v) he had no access to Inno-Vida’s Cayman bank statements because they were held by one of InnoVida’s subsidiaries.
On December 7, 2010, the trial court held a non-evidentiary hearing in response to Korge’s emergency motion for default and for sanctions against Toll and Osorio. The court concluded that the Defendants violated the court’s orders and rulings on no less than seven separate occasions. It found these violations to be willful and in bad faith, with the intent to deceive and obstruct Korge’s legitimate discovery efforts. The court did not grant the requested default, but awarded Korge attorney’s fees and costs incurred as a result of Defendants’ misconduct. On February 17, 2011 a hearing was held on a subsequent motion to compel filed by Korge. Korge once again sought production of InnoVida’s verified bank statements, and the court again ordered that Toll and Osorio produce the statements-this time by February 21, 2011. Defendants failed to produce the documents and Korge filed a renewed motion for default. This motion was a mere one and one-half pages in length, asserting the following ground as the basis for renewing its request for default: that the Defendants failed “to produce certified copies of InnoVida’s bank statements and personal financial records for Defendants Osorio and Amarilis by February 21, 2011.”
On March 1, 2011, the trial court held a hearing on the renewed motion for default. As was the case at the December 7, 2010 default hearing, the court took no testimony and received no evidence. At the conclusion of the March 1 hearing, the trial court found that the Defendants willfully disregarded the court’s orders in their failure to attend depositions[3] and produce *886 documents, resulting in the delay of the discovery process.
On March 3, 2011, the court entered an eleven-page order that mirrored, nearly word for word, the proposed order submitted by Korge.[4] The order granted Korge’s renewed motion for default against all Defendants and entered a final default judgment against all Defendants in the amount of $4,012,500. The trial court’s order generally referred to the Defendants in the collective. The only individualized findings attributed to Toll were his failure to appear for deposition and his failure to produce the InnoVida bank statements.[5] The order failed to make any factual findings as to whether the conduct was attributed to Toll’s counsel rather than to Toll himself.
Toll thereafter engaged new and separate counsel to represent him and filed a motion for reconsideration and a request for an evidentiary hearing. In that motion, Toll repeated the assertions made during his deposition testimony — namely, that prior counsel never made Toll aware of the discovery requests or the court’s various orders compelling discovery; the first time he met his prior attorney (who represented both Toll and Osorio) was on October 20, the day before Toll’s deposition; Toll never advised his prior attorney that he was out of the country and unavailable for deposition on a previous date set for his deposition; and Toll did not have access to InnoVida’s Cayman Island bank account or the bank statements. In the motion for reconsideration, Toll alleged that Osorio had hired Toll as a CFO but restricted Toll’s access to certain financial information, including the bank statements which were the subject of the request for production. Toll alleged there was a conflict of interest between himself and Oso-rio, and that prior counsel had kept Toll “in the dark,” representing only the interests of Osorio. Toll also alleged that the trial court failed to make the necessary findings as required by Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993) and its progeny. Toll requested the trial court to conduct a hearing to consider this evidence. The trial court denied the motion for reconsideration, and this appeal followed.

ANALYSIS

It is well established in Florida “that determining sanctions for discovery violations is committed to the discretion of the trial court, and will not be disturbed upon appeal absent an abuse of the sound exercise of that discretion.” Ham v. Dunmire, 891 So.2d 492, 495 (Fla.2004) (citing *887 Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983)). Dismissing an action for failure to comply with discovery orders is “the most severe of all sanctions which should be employed only in extreme circumstances.” Id. Where a trial court fails to make express written findings of fact to support a conclusion that a party’s failure to obey court orders demonstrates willful or deliberate disregard, the dismissal of such action constitutes an abuse of discretion. Id. (citing Commonwealth Fed. Savings & Loan Ass’n. v. Tubero, 569 So.2d 1271 (Fla.1990)). In Ham, the Supreme Court explained:
Express findings are required to ensure that the trial judge has consciously determined that the failure was more than a mistake, neglect or inadvertence, and to assist the reviewing court to the extent the record is susceptible to more than one interpretation. While no magic words are required, the trial court must make a finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard.
Moreover, to ensure that a litigant is not unduly punished for failures of counsel, the trial court must consider whether dismissal with prejudice is warranted.
Ham, 891 So.2d at 496. (Internal quotations omitted).
The Supreme Court has articulated a six-factor analysis to determine whether a dismissal with prejudice is an appropriate sanction due to an attorney’s behavior:
1) Whether the attorney’s disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience;
2) Whether the attorney has been previously sanctioned;
3) Whether the client was personally involved in the act of disobedience;
4) Whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion;
5) Whether the attorney offered reasonable justification for noncompliance; and
6) Whether the delay created significant problems of judicial administration.
Kozel, 629 So.2d at 818. See also Deutsche Bank Nat Trust Co. v. Cagigas, 85 So.3d 1181 (Fla. 3d DCA 2012). The Kozel factors ensure that a sanction is directed towards the party responsible for the error or misconduct and that dismissal is “reserved for those aggravating circumstances in which a lesser sanction would fail to achieve a just result.” Id.
While the record certainly establishes a persistent pattern of foot-dragging and failure to comply with court orders, we are compelled to conclude the trial court abused its discretion in striking Toll’s pleadings and granting a default judgment against him in the absence of compliance with the requisite procedures outlined in Ham and Kozel, in order to justify the extreme sanction imposed. The trial court failed to hold an evidentiary hearing and failed to make the necessary findings under Kozel, rendering it impossible to determine whether the Defendants’ collective dilatory conduct was personally attributable to Toll, to another defendant, or to Toll’s counsel.
For example, in the court’s March 3, 2011 order memorializing the granting of Korge’s default motion, it stated that the Defendants (referred to collectively) “willfully disobeyed” court orders, “testified falsely,” and “made false representations” to the court. However, the absence of an evidentiary record, the lack of explicit findings as to Toll, personally, and the concomitant failure to analyze the Kozel factors, especially as they pertain to Toll’s prior *888 counsel,[6] render the order fatally insufficient and prevent meaningful review to determine whether the sanction imposed is commensurate with the personal conduct of Toll. Each defendant engaged in discrete conduct (or misconduct) with regard to this litigation and had entirely different roles in InnoVida, thus placing them in dissimilar (and perhaps antagonistic) positions with regard to discovery, access to and control over the requested documents, and their respective stakes in the litigation.[7]

CONCLUSION

Accordingly, we vacate the final default judgment and remand for an evidentiary hearing and consideration of the Kozel factors. If, on remand, the trial court determines that dismissal is appropriate, the trial court shall include in its written order findings of fact with respect to each factor, and individualized findings with regard to the conduct of each of the sanctioned parties and their counsel.
ROTHENBERG, J., concurs.

. During this period of the proceedings be- ■ low, Toll and Osorio were represented by the same attorney.

. Counsel’s representations regarding Toll’s whereabouts on the date of the scheduled deposition, and his failure to appear for the deposition, appear to have been based upon information provided by Osorio, not by Toll. As will be seen infra, the dual representation of both Toll and Osorio, and Toll’s subsequent assertion that his counsel never notified him of the trial court’s orders (including that he appear at deposition or appear in court) plays a significant role in our analysis.

. Although Korge's renewed motion was premised upon the failure to produce documents, Korge argued the cumulative nature of the actions of Defendants. With regard to Toll’s failure to appear at deposition, Korge’s counsel argued at the hearing (and in the face of Toll’s deposition testimony to the contrary) that Toll had engaged in misrepresentation with regard to his whereabouts during his previously-scheduled deposition. Korge’s counsel argued to the court:
And Mr. Toll, who was also under the order — and just to tell you, I was there that morning for the deposition of Mr. Toll. He didn't show. His attorney, misinformed by the clients to be sure, I’m not imparting any misrepresentation to the attorney, represented that both men were out of the country *886 and that’s why they could not appear. Of course it turned, out that Craig Toll was in South Florida, unbeknownst to the attorneys. Many would say that for the clients, the defendants to make a misrepresentation that’s material like that to the court as part of disobeying a Court order is incredibly serious.
(Emphasis added).
However, as described earlier in this opinion, Toll had already explained during his October 21, 2010 deposition that he never advised his attorney that he was out of the country and unavailable for the previously-scheduled deposition. Toll also stated in his deposition that his attorney had never notified him of any court orders requiring him to appear for any deposition other than the deposition taken on October 21.

. Although the trial court's order contains several references to testimony given by Toll during his October 21 deposition, there is nothing in the record to suggest that the trial court was in fact provided with the entire transcript of Toll’s deposition testimony or considered such testimony in its decision on Korge's renewed motion for default.

. With regard to the production of the Inno-Vida Cayman Island bank statements, Toll had testified at his deposition that he did not have (and was never given) access to those documents or any information regarding that bank account.

. This is exacerbated by the lingering questions regarding a potential or actual conflict of interest between Toll and Osorio (and therefore, any conflict in prior counsel's dual representation).

. Unlike Osorio — InnoVida's controlling owner who had a central role in the operations and records of InnoVida (and, likely, ready access to the documents repeatedly requested by Korge) — Toll asserted that he had significantly less control over the company and restricted access to documents and information. There was no evidence presented to demonstrate that the failure to produce the requested documentation was willful conduct attributable to Toll, rather than due to factors beyond Toll’s control.