# Third District Court of Appeal

## State of Florida

Opinion filed November 19, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-550
Lower Tribunal No. 11-2797
_____

**Anna Hammerschmid Stockinger, Elsa Haider, and Gertrude Kuhtreiber,**
Petitioners,

vs.

**Ulrike A. Zeilberger, Personal Representative, Ulrike A. Zeilberger, Individually, Dr. Rudolf Zeilberger, and Buro Fur Genealogie, Assignee,**
Respondents.

A Writ of Certiorari for Miami-Dade County, Bernard S. Shapiro, Judge.

Law Offices of Robin Bresky, and Michele K. Feinzig (Boca Raton), for petitioners.

David Howard Goldberg, P.L., and David Howard Goldberg, for respondent Ulrike A. Zeilberger; Golden & Cowan, P.A., and Paul M. Cowan, for respondent Dr. Rudolf Zeilberger; Lawrence W. Livoti, P.A., and Lawrence W. Livoti (Fort Lauderdale), for respondent Buro Fur Genealogie.

Before SUAREZ, ROTHENBERG, and LOGUE, JJ.

LOGUE, J.

Anna Hammerschmid Stockinger, Elsa Haider, and Gertrude Kuhtreiber are elderly residents of Austria who have filed a petition to be recognized as partial heirs in the estate of the Rosina Hanko, which was probated in Miami-Dade County, Florida. They assert that they are half-sisters of the deceased. The personal representative of the estate has tried to depose them but to no avail. His attempts have been frustrated allegedly because of the health and age of the claimants, nuances in Austrian law, and other matters. After ruling on various motions filed by the parties concerning the depositions, the trial court filed an interim order stating (1) the claims of Stockinger and Haider cannot proceed because they are unavailable to be deposed, (2) "at the appropriate time upon the filing of appropriate motions undersigned [judge] will consider dismissal of those claims," and (3) Kuhtreiber will appear for deposition in Miami, Florida within 45 days. Stockinger, Haider, and Kuhtreiber filed a petition for certiorari to quash this order. We dismiss the petition for lack of jurisdiction to issue the writ.

There is a serious legal impediment to granting the writ in this case: Stockinger, Haider, and Kuhtreiber have not and cannot show irreparable harm at this stage of the proceeding. The power of district courts of appeal to review a non-final order like this by certiorari is strictly circumscribed. Fla. R. App. P. 9.030(b)(2)(A). As the Florida Supreme Court recently explained in Citizens

2

Property Insurance Corp. v. San Perdido Association, Inc., 104 So. 3d 344, 351-52 (Fla. 2012), "[v]ery few categories of non-final orders qualify for the use of a writ of certiorari." Certiorari review of non-final orders is a narrow remedy to be used in extraordinary circumstances. Certiorari is not a general license for appellate courts to closely supervise the day-to-day decision making of trial courts.

To invoke this court's power to issue a writ of certiorari, a petitioner for the writ must show that the challenged non-final order (1) departs from the essential requirements of law, (2) results in material injury for the remainder of the case, and (3) such injury is incapable of correction on postjudgment appeal. Id. at 351. These last two elements are sometimes referred to as irreparable harm. Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 721 (Fla. 2012).

The establishment of irreparable harm is a condition precedent to invoking certiorari jurisdiction. Miami-Dade Cnty. v. Dade Cnty. Police Benevolent Association, 103 So. 3d 236, 238 (Fla. 3d DCA 2012). As explained by this court:

> If the party seeking review does not demonstrate that it will suffer material injury of an irreparable nature, then an appellate court may not grant certiorari relief from a non-appealable non-final order. Similarly, if the alleged harm can be remedied on appeal, the harm is not considered irreparable, and thus certiorari relief is not merited.

Id. (citation omitted). Thus, at the outset, Stockinger, Haider, and Kuhtreiber must establish that the order at issue inflicts a material injury that cannot be corrected on appeal.

3

The order we are asked to review admittedly sends a strong signal to Stockinger, Haider, and Kuhtreiber: it puts them on notice that their cases might be dismissed. But the operative word is "might." The order actually resolves with finality absolutely nothing. It forecloses nothing, terminates nothing, dismisses nothing, and sanctions no one. In fact, the second part merely states, "at the appropriate time upon the filing of appropriate motions undersigned [judge] will consider dismissal of those claims." If the claims are ever dismissed, then, at the appropriate time upon an appropriate appeal from a final order, this court could review the matter. But at this point in time, nothing concrete has occurred.

When read in the normal context of ongoing litigation, the order merely reflects the trial judge's threat or admonishment to the parties—which is a method available to him to try to break the discovery gridlock. We should wait and see what results. Seasoned and respected trial judges, like the trial judge in this case, can be trusted to manage this type of common discovery dispute. The trial judge has done it before, and will undoubtedly do it faster, cheaper, and fairer without our interference. It is premature for an appellate court to intervene.

In fact, Stockinger, Haider, and Kuhtreiber do not claim irreparable harm is imminent. Instead, they posit that irreparable harm may occur if (1) Stockinger, Haider, and Kuhtreiber are not deposed, (2) the trial court follows through on its threat to dismiss their cases, (3) after their claims are dismissed, a Connecticut

4

Court considering a related probate immediately distributes certain assets that it controls without waiting for any appeals of the Miami-Dade dismissals to be resolved, (4) in the meantime, Stockinger, Haider, and Kuhtreiber file an appeal of the dismissal, prevail on the appeal, and ultimately win in the underlying probate matter, and (5) the assets distributed by the Connecticut court cannot be recovered. Note that each of the steps is contingent on the preceding step. If even one event does not occur, the proffered harm does not happen. Of course, these steps might occur. But the critical point is that these steps might not occur. We simply do not know.

At this point in time, Petitioners' contention that they might be irreparably harmed is based on conjecture. Such speculation and surmise are too attenuated to establish irreparable harm and, as a result, this court is without jurisdiction to issue the writ.

Dismissed.

SUAREZ, J. (specially concurring).

I write only to explain my reason for concurring in this case. To state that the facts underlying the case and, in particular, the order on appeal, are unusual, is an understatement. We are faced right now with an order from the trial court in which the trial court has stated that it MAY dismiss the case brought by Petitioners should they not appear for deposition. Do we think that the trial court will go through with the "sanction" it has stated in the order should the relatives not appear, in a word, yes. But, as all lawyers and judges know, the trial court may find another way to get a case moving along other than to follow through on what it has stated might occur. Additionally, in order not to be dismissed from this case and face appeal, the Petitioners may arrive at an amicable way to resolve the deposition issue.

In other words, although the trial court MAY dismiss the Petitioners, it has not done so nor did it state that it WOULD do so, only that it MAY do so. As such, no irreparable harm has occurred at this point. Petitions for Certiorari are sparingly granted on discovery issues. There must be irreparable harm and, as none has been suffered at this point, we would be second guessing the trial court and improperly entering into the discovery fray were we to grant this petition. It is

6

not within our authority to attempt to prophesize the outcome. Ours is to wait, and rule only if there is irreparable harm or if a final appeal is eventually brought.

SUAREZ, J., concurs.

Anna Hammerschmid Stockinger, Elsa Haider, and Gertrude Kuhtreiber v. Ulrike A. Zeilberger, Personal Representative, Ulrike A. Zeilberger, Individually, Dr. Rudolf Zeilberger, and Buro Fur Genealogie, Assignee
Case No. 3D14-550

ROTHENBERG, J. (dissenting).

Anna Hammerschmid Stockinger ("Stockinger"), Elsa Haider ("Haider"), and Gertrude Kuhtreiber ("Kuhtreiber") (collectively, "the Petitioners") seek certiorari review of the trial court's order ("Order") finding that Stockinger's and Haider's **claims cannot proceed because they are medically incapable of traveling from Austria to Miami for depositions** and that Kuhtreiber, who the trial court found was medically able to travel, must appear in Miami for depositions within forty-five days if she wishes to proceed on her claim. Because the Order departs from the essential requirements of law and because I disagree with the majority that irreparable harm has not yet occurred, I respectfully dissent from the majority opinion dismissing the petition.

The underlying probate action followed the death of Rosina Hanko ("the Decedent"), who died in Miami, Florida, leaving approximately $925,000 in three bank accounts—$850,000 in a USB Investment account located in Connecticut, $19,000 in a Bank of America account, and $56,000 in an Apple Bank account. In

8

addition to the underlying Miami-Dade probate action, two other probate actions followed in Austria and Connecticut.

The action in Miami-Dade County was initiated by the Decedent's niece, Ulrike A. Zeilberger ("Ulrike" or "Personal Representative"), in July 2011. In the Amended Petition for Administration, Ulrike alleged that the Decedent died **intestate** while domiciled in Miami and that the known "beneficiaries" are herself and the Decedent's nephew, Rudolf Zeilberger ("Rudolf"). In December 2011, the probate court issued letters of administration appointing Ulrike as personal representative and directing that all funds be placed into the court depository. In March 2012, the Petitioners, who all reside in Austria, filed a Petition for Determination of Heirs, asserting that they are the Decedent's half-sisters,[1] and therefore, pursuant to section 732.103, Florida Statutes (2011),[2] they are each entitled to 25% of the Decedent's intestate estate, while Ulrike and Rudolf are each

---

[1] The Petitioners assert that they share the same father, but have different mothers.
[2] Section 732.103 provides, in relevant part, as follows:

> **Share of other heirs**.—The part of the intestate estate not passing to the surviving spouse under s. 732.102, or the entire intestate estate if there is no surviving spouse, descends as follows:
>
> > (1)   To the descendants of the decedent.
> > (2)   If there is no descendant, to the decedent's father and mother equally, or to the survivor of them.
> > (3)   If there is none of the foregoing, to the decedent's brothers and sisters and the descendants of deceased brothers and sisters.
> > . . . .

It appears that the Decedent was not married and never had children.

entitled to only 12.5% of the Decedent's estate.

Although Ulrike and Rudolf filed a probate action claiming the Decedent died intestate, they produced a holographic will in a later-filed action in Austria, and the Austrian court declared that the Decedent's holographic will naming Ulrike and Rudolf as sole equal beneficiaries was valid under Austrian law.[3] The Austrian court, however, rejected jurisdiction over "movable assets located abroad," including the three bank accounts at issue in this case.

Rudolf then filed an ancillary probate action in Stamford, Connecticut, where the UBS Investment account is located. Rudolf did not serve the Petitioners with notice of this action, and he did not notify the Connecticut court that the Petitioners have claimed an interest in the Decedent's estate as heirs in the Miami-Dade action. The Connecticut court entered a decree granting ancillary probate of the holographic will, finding that the Austrian court admitted the holographic will to probate. However, the Connecticut decree provides: "No withdrawals of principal or interest shall be made from any restricted account without written approval from the Stamford Probate Court."

Thereafter, in August 2012, Rudolf filed a motion to dismiss the Miami-

---

[3] As translated, the holographic will provides that the Decedent bequeathed her entire estate to her "sister," Anni Zeilberger, and after Anni's death, to Anni's children, Ulrike and Rudolf. Based on the record before this Court, it appears that Anni is the Decedent's half-sister, as they share the same mother, but not the same father.

10

Dade probate action for improper venue or, in the alternative, to convert it to an ancillary administration, which informed the Miami-Dade probate court of the Austrian court's decree and stated that the Connecticut court's decree had become final on July 31, 2012. The motion asserted that venue is improper in Miami-Dade County because the Decedent was not domiciled in Miami-Dade County and the majority of her assets are not located in Miami-Dade County, and that venue is proper in Connecticut because the majority of her assets, including the USB account, are located in Connecticut. This motion is currently pending before the Miami-Dade probate court.

The parties began conducting discovery in preparation for the Miami-Dade probate action, and the Personal Representative noticed the Petitioners for depositions in Miami. In response, the Petitioners filed a verified motion for protective order ("First MPO") based on the burdensome expense of traveling from Austria to Miami and on the Petitioners' ages—Kuhtreiber was 62 years old, Stockinger was 75 years old, and Haider was 80 years old. The motion also asserted that, although the Petitioners have never met the Decedent and have never had any contact with the Decedent, in 1957, Haider read a letter that her father had received from the Decedent informing him that she had married and was residing in the United States. The Petitioners further asserted that they have no other relevant information to provide except for their "document-driven" proof of their

11

familial relationship to the Decedent, and therefore, there are less burdensome available alternatives to taking their depositions in Miami (e.g., interrogatories, demands for production, depositions by video link).

At the hearing on the First MPO, when determining whether a protective order was warranted, when the trial court noted that there were no allegations that any of the Petitioners were ill, Ulrike's counsel responded that if the Petitioners' physicians opined that they were unable to travel to Miami for their depositions, he would "go to plan B." The trial court denied the First MPO and ordered the Petitioners to appear in Miami-Dade County within 90 days for depositions.

Thereafter, the Petitioners served a second verified motion for protective order ("Second MPO") stating that they cannot safely travel to Miami due to "bona-fide medical reasons." In support, the Petitioners submitted letters from their physicians stating, under penalty of perjury, that the Petitioners cannot travel by air for various medical reasons—Haider has primary cardiac disease; Kuhtreiber suffers from post-traumatic stress syndrome and claustrophobia; and Stockinger has undergone several ear surgeries and suffers from hearing loss. The Second MPO also restated the Petitioners' arguments regarding the expense of travel, the superfluous nature of the depositions given the "document-driven" nature of the dispute, and the availability of less burdensome means of obtaining the necessary information. In response, Ulrike served a motion to compel the

Petitioners' attendance for deposition and for sanctions.

Following a hearing, the trial court entered an order granting, in part, the Second MPO. The trial court specifically found that **Stockinger and Haider are medically prohibited from traveling by air**, but that Kuhtreiber failed to support her claim that she cannot travel by air. The trial court also found that telephonic/video depositions are not practical because using a translator would be overly burdensome, questioning the Petitioners about documents is logistically impossible, and Stockinger's severe hearing loss would preclude electronic communications between herself and the attorney deposing her. Based on these findings, the trial court granted the Second MPO as to Stockinger and Haider, ruling that they would be responsible for paying the Personal Representative's counsel's travel expenses to Austria, which include coach airfare, accommodations at a three-star hotel, meals, and incidentals. The trial court denied the Second MPO as to Kuhtreiber, but gave her the option of either sharing in the Personal Representative's travel expenses and being deposed in Austria or traveling to Miami for her deposition. The trial court ordered that the depositions be completed within 60 days.

On November 6, 2013, counsel for the Personal Representative, Mr. Goldberg, requested that the Petitioners "Please hold Thursday, December 5th and Friday, December 6th for depositions." The Petitioners offered to assist in locating

a court reporter and a translator, agreed to meet Mr. Goldberg in Vienna to reduce his travel time, and confirmed their availability and desire to proceed. However, instead of booking his flight, and despite the clarity of the trial court's order, Mr. Goldberg demanded travel expenses for three individuals—himself, a court reporter, and a notary—and he also demanded that the estimated costs for their travel, $5,266.06, be paid in advance.

Understandably upset by Mr. Goldberg's deviations from the trial court's order, the Petitioners refused, absent a court order, to pay the travel expenses for the court reporter and to submit advance payment for these additional expenses. The Petitioners, however, notified Mr. Goldberg that the funds for **his** travel expenses had already been placed in their Florida counsel's trust account in accordance with the trial court's order.

In response, on December 2, 2013, Mr. Goldberg served an Emergency Motion for an Order to Show Cause and for Extension of Time within which to take the depositions of the Petitioners and seeking prepayment of the travel expenses for himself, a court reporter and a notary. Buro Fur Genealogie[4] filed a response to this motion, asserting that the trial court's order indicated that the travel expenses would only be for the Personal Representative's counsel and that

_____

[4] Buro Fur Genealogie is an heir-finding company. The Petitioners have apparently assigned a portion of their claimed interest in the Decedent's estate to Buro Fur Genealogie.

14

the order did not require prepayment of these expenses.

Rather than simply ruling on Mr. Goldberg's motion and resolving the issue of how many individual's expenses were to be borne by the Petitioners and how payment was to be made, the trial court extended the time to take the depositions, reopened the litigation on whether the depositions should be taken in Austria, and ordered the parties to submit memoranda regarding the requirements for taking depositions in Austria. Thus, what should have been a simple issue to resolve morphed into a complicated analysis of Austrian law.

Ulrike contended that the Austrian Ministry of Foreign Affairs must first grant permission to take discovery, and if permission is granted, the depositions would be conducted by a local judge who may allow the American attorney's presence; but if the American attorney is allowed to attend, he may not pose any questions. In contrast, the Petitioners claimed that the Austrian Ministry of Justice usually approves such requests and that many American attorneys have conducted depositions in Austria pursuant to United States procedural law. Neither party, however, addressed whether the above requirements even apply when all parties consent to the taking of depositions.

After conducting a hearing, and apparently abandoning the scope of the expenses it had previously ordered, the trial court entered its Order finding that, based on the parties' memoranda, "it is abundantly clear that the process to be

15

followed is complex, time consuming and expensive with their being no guarantee that required governmental approval from Austria would be forthcoming," and even if the Austrian government granted permission, the "deposition would be taken in all likelihood by an Austrian Judge, not attorney Goldberg, and in all probability outside the presence of Attorney Goldberg." Thus, the trial court found that this procedure was "unacceptable" and ordered that **Stockinger's and Haider's claims "may not proceed due to their unavailability to appear for the taking of their depositions**," and that "upon the filing of appropriate Motions," the trial court "will consider dismissal of those claims." As to Kuhtreiber, the trial court ruled that she is capable of traveling to Miami, and "should she wish to proceed herein she shall appear for the taking of same within 45 days." This petition for writ of certiorari followed.

In seeking certiorari relief, the Petitioners must demonstrate that the trial court's Order "depart[s] from the essential requirements of law, resulting in irreparable harm that cannot be adequately remedied on final appeal." Millennium Diagnostic Imaging Ctr., Inc. v. State Farm Mut. Auto. Ins. Co., 129 So. 3d 1086, 1089 (Fla. 3d DCA 2013); see also Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004) ("It is well settled that to obtain a writ of certiorari, there must exist '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be

16

corrected on postjudgment appeal.'" (quoting <u>Bd. of Regents v. Snyder</u>, 826 So. 2d 382, 387 (Fla. 2d DCA 2002))); <u>Miccosukee Tribe of Indians v. Lehtinen</u>, 114 So. 3d 329, 331 (Fla. 3d DCA 2013) ("A common law writ of certiorari is proper and will be granted when a trial court's determination constitutes a clear departure from the essential requirements of the law resulting in material injury for the remainder of the case that cannot be properly remedied on post-judgment appeal."). "Material injury and irreparable harm are 'jurisdictional prerequisites to certiorari relief.'" <u>Millennium Diagnostic Imaging Ctr.</u>, 129 So. 3d at 1089 (quoting <u>Nucci v. Nucci</u>, 987 So. 2d 135, 139 (Fla. 2d DCA 2008)); <u>see also</u> <u>Poston v. Wiggins</u>, 112 So. 3d 783, 785 (Fla. 1st DCA 2013) (holding that in ruling on a petition for writ of certiorari, the reviewing court "must first conduct a jurisdictional analysis to determine whether the petitioner had made a prima facie showing of irreparable harm"); <u>Jackson v. Computer Sci. Raytheon</u>, 36 So. 3d 754, 756 (Fla. 1st DCA 2010) ("Certiorari jurisdiction does not arise unless the court first establishes irreparable harm.").

The trial court's Order constitutes a departure from the essential requirements of law. The trial court's Order precludes Haider and Stockinger from proceeding on their claims unless they appear for depositions in Miami despite a finding by the trial court that they are medically incapable of traveling to Miami. As to Kuhtreiber, the trial court determined that Kuhtreiber is capable of traveling

17

from Austria to Miami despite Kuhtreiber's physician's **unrebutted** orders that "air travel, particularly on long-haul flights, is strongly discouraged!" due to Kuhtreiber's post-traumatic stress syndrome and claustrophobia. Nonetheless, the trial court ruled that "should [Kuhtreiber] wish to proceed herein she shall appear for the taking of same within 45 days." Therefore, if this Court does not quash the Order, Kuhtreiber will be faced with a very difficult decision: risk traveling to Miami against the advice of her physician or have her claim dismissed; and Haider and Stockinger will effectively be shut out of the litigation regardless of whether the trial court actually dismisses their claims.

Although a trial court has discretion to impose sanctions for discovery violations, see Ham v. Dunmire, 891 So. 2d 492, 495 (Fla. 2004) ("It is well settled that determining sanctions for discovery violations is committed to the discretion of the trial court, and will not be disturbed upon appeal absent an abuse of the sound exercise of that discretion."), the Petitioners have yet to commit any discovery violations. They merely sought a protective order. Further, the purpose of imposing a sanction for discovery violations is "to ensure compliance with the trial court's order rather than to punish." Deutsche Bank Nat'l Trust Co. v. LGC, 107 So. 3d 486, 488 (Fla. 2d DCA 2013). The trial court is undoubtedly aware that threatening Stockinger and Haider with dismissal of their claims cannot encourage them to travel to Miami for the depositions because **they are medically**

18

**prohibited from doing so**. Further, giving Kuhtreiber the ultimatum of either traveling to Miami or facing dismissal of her claim will not reasonably "ensure compliance" with any of the trial court's orders, but rather, will merely "punish" her by forcing her to choose between risking her health to travel to Miami for the deposition and having her claim dismissed. Such punitive sanctions are unduly harsh and improper.

Dismissing a party's claim "is the most severe sanction a court may impose," and it "should be reserved for the most egregious conduct and used only in the most extreme circumstances," Littlefield v. Torrence, 778 So. 2d 368, 369 (Fla. 2d DCA 2001), such as when the violation is "'willful, flagrant, contumacious, or contemptuous.'" Id. (quoting Momenah v. Ammache, 616 So. 2d 121, 123 (Fla. 2d DCA 1993)); see also Toll v. Korge, 127 So. 3d 883, 887 (Fla. 3d DCA 2013) (providing that as dismissal of a claim for violation of a discovery order is "the most severe of all sanctions," it "should be employed only in extreme circumstances" (quoting Ham, 891 So. 2d at 495)).

Although the majority finds that irreparable harm has not yet occurred because the parties' claims have not been dismissed, **precluding a party from participating in the proceedings as a sanction for failing to appear for a deposition in Miami when the party is medically incapable of doing so is no less a sanction than an outright dismissal of the party's claim**. The Petitioners'

19

conduct in this case does not warrant the imposition of such a dire sanction, as they have not engaged in any egregious conduct. This is especially true where, as here, the Petitioners are more than willing to be deposed in Austria, they have agreed to pay the Respondents' counsel's costs to travel to Austria to depose them, there are several available alternative options to depose the Petitioners without requiring them to travel to Miami, and the Petitioners have very little information to provide other than the documents they have already provided to the Respondents.

To the contrary, Ulrike's actions are responsible for causing further delay and substantial legal fees in this action. Simply put, if Ulrike's counsel had traveled to Austria as initially ordered by the trial court, the depositions would most likely have taken place without incident as it appears that the Petitioners were more than willing to cooperate.

Additionally, the trial court apparently changed its earlier ruling ordering that the depositions must be taken in Austria after it concluded that the deposition process in Austria would **likely** be "complex, time consuming and expensive." Thus, rather than attempting to maneuver through this "complex, time consuming and expensive" process, the trial court chose a route that effectively dismissed potentially valid claims despite the Petitioners' compliance with all discovery orders and their willingness to be deposed in Austria. And, although it may have been burdensome to conduct telephonic/video depositions due to Stockinger's

hearing impairment and the parties' need to use the services of an interpreter, the necessary accommodations could have been made, especially where the trial court has already concluded that Stockinger and Haider are medically prohibited from traveling to Miami to be deposed and where such travel is "strongly discouraged" for Kuhtreiber.

Lastly, and importantly, it is unrefuted that the Petitioners' claims are "document driven." The Petitioners have already admitted that they have never met the Decedent and did not maintain a relationship with the Decedent. Because the Petitioners are seeking an interest in the Decedent's intestate estate as the Decedent's heirs, their relationship (or lack of relationship) with the Decedent is irrelevant, and their claims can be established based solely on authenticated, written documents. In fact, the Petitioners attached to their petition for determination of heirs numerous birth records and a family chart indicating that the Petitioners and the Decedent are half-sisters. Thus, in reality, the Petitioners' depositions likely will not result in much relevant information, if any, as their claims are purely document driven, and they have already admitted that they have never met the Decedent and did not maintain a relationship with the Decedent. Based on these reasons, the trial court's Order departs from the essential requirements of law and will cause irreparable harm.

More importantly, since the majority opinion appears to concede that the

21

trial court departed from the essential requirement of law, the petition should not be dismissed as premature as the majority concludes. Although the trial court has not yet carried out its threat to **dismiss** the Petitioners' claims, the trial court **has precluded the Petitioners from proceeding with their claims**, which will lead to the same result—the Respondents will proceed with no objection or input by the Petitioners. And without the impediment of the Petitioners, the Respondents will most likely become the sole beneficiaries of their deceased aunt's estate. In other words, **certiorari relief is not premature because the trial court's Order ends Haider's and Stockinger's participation in the lawsuit regardless of whether or not the trial court ultimately dismisses their claims at some later date**.

Although certiorari is not a general license for appellate courts to closely supervise the day-to-day decision making of the trial courts, closing the courtroom doors to parties in a lawsuit who, even by the trial court's own admission, have not willingly disobeyed any court order is not only a clear departure from the law, it is a violation of the most basic constitutional principles of due process and access to our courts.

The trial court's Order will cause irreparable harm that cannot be adequately remedied on plenary appeal because the trial court's Order precludes the Petitioners' from proceeding with their claims. The Order will prevent the Petitioners from participating in the pending discovery or in the action itself.

Therefore, the Petitioners will be barred from attempting to establish that they are the Decedent's heirs and are thus entitled to a significant portion of the Decedent's estate under section 732.103 of the Florida Statutes. Additionally, because the Petitioners have been effectively barred from proceeding in the Miami-Dade probate action, and because the Connecticut probate court has accepted administration of the holographic will, the Decedent's estate may be distributed to Ulrike and Rudolf while the Petitioners are barred from asserting their rights to the estate here in Miami-Dade County under section 732.103. This would leave the Petitioners with no recourse. Thus, the Order will cause irreparable harm that cannot be remedied on plenary appeal.

As the Petitioners have established that the trial court's Order departs from the essential requirements of law and that the Order will result in material injury that cannot be remedied on plenary appeal, I would grant the petition for writ of certiorari and quash the order under review.