PER CURIAM.
Appellants, Robert Erdman and Carol Erdman [“Erdman”], appeal a final order dismissing their complaint with prejudice *64 because of their failure to comply with a court order compelling disclosure of their expert witness. We reverse.
Erdman brought suit against Appellees, Jonathan Bloch, M.D. and Melbourne Internal Medicine Associates, P.A. [“collectively Appellees”], alleging medical malpractice. Appellees filed separate answers and affirmative defenses. The parties engaged in discovery for approximately one year. At that point, Erdman filed their notice for jury trial on August 4, 2008. The trial court accordingly issued an order setting various pre-trial deadlines, including disclosure of expert witnesses by March 2, 2009. Erdman disclosed their expert witness on March 9, 2009.
Appellees had difficulty in securing discovery from Erdman’s retained expert and filed a motion to strike the expert. They also filed a motion to compel responses to expert discovery. Thereafter, Erdman moved to remove the case from the trial docket on the ground that they had been unable to locate their expert witness and additional time was required for Erdman to retain a new expert. The trial date was moved and a new order establishing disclosure deadlines was entered that included a new expert witness disclosure deadline of September 14, 2009. On September 18, 2009, Appellees filed a renewed motion to compel response to expert discovery and filed a motion to compel the depositions of Erdman’s experts.
A hearing on Appellees’ various motions was conducted on November 4, 2009. At the hearing, counsel for Erdman informed the court that their retained expert had “just disappeared off the face of the earth ... literally cannot be found anywhere.” Erdman requested a sixty-day extension of time in order to find a new expert witness and to respond to Appellees’ discovery requests. Specifically, Erdman’s counsel requested:
[A]nd what I ask is the court’s indulgence to say — essentially to give me 60 days to get something to Ms. Flanagan. And if I can produce an expert and some expert discovery for her, that obviates most of the points that are in her discovery requests that we would be here about today. And if I can’t produce another expert within that time period, I don’t think I’m ever going to get one.
The trial court then went on to confirm exactly what it was that counsel for Erd-man was requesting, with the following exchange taking place between the court and Erdman’s counsel:
The Court: So you want a drop dead date of 60 days for your expert?
Mr. Torres: That’s maybe a bad term but, yes, Sir. And at that time — at that juncture, if we have it—
The Court: What’s the nature of the expertise?
Mr. Torres: It’s a general surgeon.
Again, during the hearing, Erdman’s counsel restated the agreement as follows:
[B]ut then at 60 days, Judge, if I can’t find an expert at that point, I’m sure Ms. Flanagan will have a motion, and we’ll have to deal with the fact that I don’t have an expert and I can’t go forward. And we’ll have to deal with the case at that point. It gives me a little time, recognizing my own personal situation that I don’t want to burden the court with but that’s just what I’m facing right now. And so we’re looking at, you know, middle of January, January 15th, or let’s say that’s a little more than 60 days to give a final answer and respond to expert discovery. If I can’t do it at that time, I don’t think I’m ever going to be able to do it.
Lastly, Erdman’s counsel and the trial court engaged in the following discussion:
*65 Mr. Torres: At that point, you would then be in a position to say, here’s when we’re going to try this case or Ms. Flanagan is going to have a motion for summary judgment, which is going to dissolve [sic] the case or my client is going to take a voluntary dismissal at that juncture. And we would be in that position at that time to put up or shut up and move forward or not.
The Court: So be it.
Ms. Flanagan: Judge, if Mr. Torres doesn’t have an expert in 60 days, I would ask that it be self-executing and the Court enter an order dismissing—
The Court: I don’t want it to be self-executing but it’s going to happen. In other words, if he doesn’t have an expert within 60 days, it’s a drop dead date.
Ms. Flanagan: Can I just — without having to come over here and move for a summary judgment and get an affidavit and all that, can I just — can we just have a motion for entry of involuntary dismissal and submit an order without a hearing?
The Court: I think you need a hearing ... .but if the facts and circumstances are the same today as they are going— in 60 days the same today, then case gone. But I need a hearing.
After the hearing, the trial court continued the trial and entered an order that provided in relevant part as follows:
1. Plaintiff’s Motion to Continue Trial is GRANTED. The case has been removed from the January 4, 2010 trial docket.
2. Defendants’ Motion to Compel Depositions of Experts is GRANTED. If the Plaintiffs have not disclosed a standard of care expert on or before January 15, 2010, the Court will involuntarily dismiss this case.
Erdman did not identify an expert by the January 15, 2010, deadline. As a result, Appellees filed a motion for an involuntary dismissal of the lawsuit. It appears a hearing was conducted, although there is no transcript of any hearing in the record. The trial court entered the final order of dismissal with prejudice on January 20, 2010, and this appeal followed.
Dismissal of a complaint for noncompliance with a court order is subject to an abuse of discretion standard of review. Bank One, N.A. v. Harrod, 873 So.2d 519, 520 (Fla. 4th DCA 2004). Since 1994, however, the Florida Supreme Court has made a distinction between non-compliance attributable to the litigant and neglect or misconduct attributable to counsel in considering the propriety of dismissal as a sanction. In Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993), the supreme court said that a dismissal “based solely on the attorney’s neglect” in a manner that unduly punishes the litigant “espouses a policy that this Court does not wish to promote.” Id. at 818. The Kozel court articulated' a six-factor test for determining whether a dismissal with prejudice is warranted where the failure was attributable to the attorney. These factors include:
1. Whether the attorney’s disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience;
2. Whether the attorney has previously been sanctioned;
3. Whether the client is personally involved in the act of disobedience;
4. Whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion;
5. Whether the attorney offered reasonable justification for noncompliance; and
*66 6. Whether the delay created significant problems of judicial administration.
Id. If consideration of these factors suggests the attorney was at fault and if a sanction less severe than dismissal appears to be a viable alternative, the trial court should employ such an alternative. Id. In Kozel, the court observed that where the attorney alone is responsible for the noncompliance with a court order, “a fine, public reprimand, or contempt order may often be the appropriate sanction.” Id.
The dismissal of an action based on the violation of a discovery order requires express written findings of fact supporting the conclusion that the failure to obey the court order demonstrated willful or deliberate disregard. Ham v. Dun-mire, 891 So.2d 492, 495-96 (Fla.2004). Express findings are required to ensure that the trial judge has determined that the failure was more than a mistake, neglect, or inadvertence, and to assist the reviewing court to the extent the record is susceptible to more than one interpretation. Id. at 496. While no “magic words” are required, the trial court must make a “finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard.” Id.
This Court, along with the other district courts, has also interpreted Kozel to require written findings addressing the Kozel factors in an order of dismissal. Arkiteknic, Inc. v. United Glass Laminating, Inc., 53 So.3d 366, 367 (Fla. 3d DCA 2011); Sanders v. Gussin, 30 So.3d 699, 703 (Fla. 5th DCA 2010); Smith v. City of Panama, 951 So.2d 959, 962 (Fla. 1st DCA 2007); Pixton v. Williams Scotsman, Inc., 924 So.2d 37, 40 (Fla. 5th DCA 2006); Rohlwing v. Myakka River Real Props., Inc., 884 So.2d 402, 407 (Fla. 2d DCA 2004); Fla. Nat’l Org. for Women, Inc. v. State, 832 So.2d 911, 914 (Fla. 1st DCA 2002).
Here, the trial court’s order failed to make the required findings. Appellees, however, contend that since the dismissal was based in part upon the acquiescence of Erdman’s counsel during the November 4, 2009, hearing, as recounted above, the trial court did not have to consider or make findings on the Kozel factors prior to dismissal. We do not find that counsel’s statements amounted to an agreement to disregard Kozel.
Because of the absence of a hearing transcript, it is not clear from the record whether the trial court considered the Ko-zel factors at the hearing prior to dismissal of the case. If the court had made the findings in the order, the absence of a transcript would have prevented review; but in the absence of such findings, we are bound to reverse and remand for the required findings or, if needed, a Kozel hearing.
REVERSED and REMANDED.
MONACO, C.J., GRIFFIN and JACOBUS, JJ., concur.