# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 6D2024-1525
Lower Tribunal No. 2022-CA-008858

———————————————

WINTER PARK HOSPITALITY, LLC, d/b/a QUALITY INN & SUITES,

Appellant,

v.

ON TARGET STAFFING, LLC,

Appellee.

———————————————

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Orange County.
A. James Craner, Judge.

September 8, 2025

MOE, A.G., Associate Judge.

Winter Park Hospitality, LLC ("WPH") appeals a single order, the denial of its motion to set aside default and default judgment. Yet most of the arguments raised in its Initial Brief address the merits of the trial court's order entering a default final judgment against WPH based on its failure to retain new counsel in the time provided by the trial court's order. Because WPH failed to timely appeal that order, it is not properly before us. Instead, our review is limited to the trial court's order

dated June 5, 2024, which denied WPH's motion to set aside on the grounds of excusable neglect. Finding no error as to that order, we affirm.

I.

WPH operates a Quality Inn & Suites in Orange County, Florida. It contracted with Appellee On Target Staffing, LLC ("On Target") for staffing services. In 2022, On Target sued WPH for, among other things, breach of contract based on WPH's alleged failure to pay On Target the amounts due under the contract.

During that litigation, WPH was defaulted twice. The first time, WPH was defaulted by the clerk. The second time, the default was entered by the court as a sanction for WPH's failure to comply with an order directing WPH to retain counsel. Context matters, so even though it is only the court's denial of WPH's motion to set aside the second default and the default final judgment that is before us here, we discuss the circumstances surrounding both defaults.

A.

The first default was entered by the clerk when WPH failed to timely respond to the complaint. When it moved to set aside the clerk's default, WPH represented that its failure to respond to the complaint was attributable to excusable neglect. WPH supported the motion with a sworn affidavit of its general manager. The general manager took responsibility for the error, explaining that he failed to follow certain "corporate practices and procedures" of WPH relating to the retention of

2

counsel. He explained that the corporate practices and procedures of WPH are necessary because WPH's owner resides in the city of Abu Dhabi in the United Arab Emirates. The general manager was "under the mistaken understanding" that the owner of WPH would retain counsel for WPH. He learned that his understanding was mistaken when the owner called him to confirm whether counsel had been retained.

The general manager explained in his affidavit that he decided to go to the courthouse in person to obtain an extension of time. While there, he learned that he "was unable to obtain an extension myself."

More than a week after learning that it was his job to retain counsel, the general manager called an attorney. In that conversation, the attorney informed him that a clerk's default had been entered. The general manager claimed that this "was the first time [WPH] obtained knowledge that a clerk's default had been entered against [WPH]."

WPH filed a motion to set aside the default. In the motion, WPH maintained that due to the general manager's "inexperience, unfamiliarity, and misunderstanding as to [WPH]'s practices and procedures with respect to retaining counsel to represent [WPH] in Florida lawsuits," there was a breakdown in WPH's procedures that led to the entry of the clerk's default. On review of the motion and

3

supporting affidavits, the trial court granted the first motion to set aside and the case proceeded.

## B.

Nearly eighteen months[1] into the case, a mediation was held. For reasons not clear in the record, the trial had already been continued once. The mediation was set for March 6, 2024, with a one-day non-jury trial scheduled for March 24, 2024.[2] Mark Mazen, WPH's vice president, attended the mediation along with WPH's counsel.

At the mediation, On Target produced for the first time certain documents that WPH requested in discovery.[3] A disagreement emerged between WPH and its attorneys about the impact of those documents on WPH's trial strategy. The mediation resulted in an impasse. Displeased with their advice about the documents, WPH then chose to fire its lawyers.

---

[1] Under Rule 2.250(a)(1)(B)(2), twelve months is "the presumptively reasonable time period for the completion" of non-jury civil cases in the trial courts and "most cases should be completed" within that time. *See* Fla. R. Gen. Prac. & Jud. Admin. 2.250(a)(1)(B).

[2] The case was initially set for a non-jury trial on December 4, 2023. For reasons unclear from the record, just before the November 2023 pretrial conference the court entered an order that re-set the non-jury trial for March 25, 2024.

[3] Under the trial order, discovery remained open until the day before the pretrial conference.

Arguing that withdrawal was now mandatory in light of the discharge, WPH's counsel moved to withdraw. In support of the motion, WPH's counsel filed WPH's written consent to the withdrawal. Mr. Mazen signed the consent on behalf of WPH. WPH was notified of both the motion and the hearing on the motion, but nothing in the record suggests that WPH chose to attend the hearing.

The record provided to us does not include a transcript of the hearing on the motion to withdraw. Nevertheless, the necessary details are evident from the record. The court granted the motion to withdraw, continued the trial for a second time, and although WPH's withdrawing counsel asked for thirty days to seek new counsel, the court granted only ten. The court was explicit that the ten-day deadline included both the deadline to hire new counsel and the deadline for new counsel to enter an appearance. It warned WPH of sanctions if it failed to timely comply. Forecasting that sanctions may include "the striking of pleadings," the court directed the setting of a status conference promptly after WPH's deadline. WPH's withdrawing counsel prepared the written order, which listed numerous individuals designated to receive notices on behalf of WPH, including Mr. Mazen and an individual named Sterling Scott Willis.

The written order directed that "WPH shall retain new counsel who shall file a Notice of Appearance within ten (10) days of the date of this Order." It warned that "[i]f WPH does not timely retain new counsel who makes an appearance on its

5

behalf within the time frame set forth in this Order, then the Court will assume that WPH is no longer interested in participating in these proceedings, and the Court may enter an appropriate sanction as a result." Further, the written order explained that the case management conference was necessary to address "the status of WPH's retaining new counsel and to set the trial in this matter." According to the certificate of service, a copy of the order granting the motion to withdraw was sent to eight recipients affiliated with WPH, including Mr. Willis and Mr. Mazen.

As directed, On Target noticed a case management conference for 8:30 a.m. on April 2, 2024. According to the certificate of service, notice of the case management conference was sent to WPH through Mr. Willis.

When the court conducted the case management conference, no one appeared on behalf of WPH. On review of the file, the court determined that WPH failed to comply with the requirement to retain counsel. Consistent with its warning that it would "assume that WPH is no longer interested in participating in these proceedings," the court entered a judicial default against WPH.

Though he did not attend the case management conference and later claimed to be unaware of it, Mr. Mazen went to the courthouse after the case management conference was over. While there, although WPH was presumably aware that the

6

company could not be heard through a non-lawyer,[4] Mr. Mazen filed two documents on behalf of WPH. The first document was a motion. Though the only matter that had been "scheduled" was the case management conference—and WPH contended it did not know about the case management conference—Mr. Mazen asked the court to "reschedule the case." Though he would later claim that "the shortened timeframe and urgency to retain new counsel was not relayed properly" to him when WPH's counsel withdrew, Mr. Mazen asked the court to give WPH more time to procure new counsel.

The second document Mr. Mazen filed was a Designation of E-Mail Address. In it, he provided the same email address for himself as was listed in the motion to withdraw and in the certificate of service attached to the order granting that motion. Mr. Mazen also listed his mailing address.

Two days after the court entered the judicial default, On Target filed a motion for default final judgment. According to its certificate of service, Mr. Mazen was served at the same email and mailing addresses listed in his Designation of E-Mail Address.

---

[4] "A corporation must be represented by an attorney when it appears in the courts of the State of Florida." *Punta Gorda Pines Dev., Inc. v. Slack Excavating, Inc.*, 468 So. 2d 438, 439 (Fla. 2d DCA 1985) (citing *Quinn v. Hous. Auth. of Orlando*, 385 So. 2d 1167 (Fla. 5th DCA 1980)). A representation contained in the affidavit of WPH's general manager filed in support of the motion to set aside the clerk's default suggests that WPH was aware of this requirement.

A default final judgment was entered on April 8, 2024. Again, the certificate of service reflects that Mr. Mazen was served with a copy at the same email and mailing addresses he listed in his Designation of E-Mail Address.

On April 12, 2024, On Target moved for an award of attorney fees. According to the certificate of service, Mr. Mazen was served with a copy at the same email and mailing addresses he listed in his Designation of E-Mail Address.

The motion for attorney fees was granted by entry of an order dated May 1, 2024. According to the certificate of service, WPH received a copy of the order by U.S. Mail through Mr. Willis.

Forty-six days after the deadline the court gave WPH to hire new counsel, new counsel appeared for WPH on May 15, 2024. On that date, WPH moved to set aside the default and default judgment.

In the motion to set aside, WPH claimed it was not notified of the deadline to retain counsel. Further, WPH contended it was not notified of the case management conference, the entry of a judicial default, or the entry of a default final judgment. The motion alleged that Mr. Mazen was unaware of the case management conference, but did not dispute that Mr. Willis was served with the related notice of hearing. Without addressing the fact that Mr. Mazen is listed on the certificate of service for the motion for judicial default and motion for default final judgment, WPH alleged that Mr. Willis was not notified.

Although Mr. Mazen's own signature on WPH's consent to the motion to withdraw demonstrates that Mr. Mazen (and WPH) knew of the withdrawal, WPH alleged that because "Mr. Willis was not given any notices," he "could not advise Mr. Mazen on the urgency of retaining counsel." WPH did not acknowledge that Mr. Mazen attended the mediation at which the dispute arose between WPH and its lawyers.

Contradicting itself, WPH alleged two different points in time when it became aware of the entry of default. Characterizing Mr. Mazen's trip to the courthouse on the same day as the case management conference as purely coincidental, WPH alleged that Mr. Mazen "misunderstood the urgency of this Court's order and was not relayed the shortened timeframe to retain new counsel . . . ."

In addition to the motion to set aside, on May 22, 2024, WPH filed an emergency motion to stay. In that motion, WPH identified Mr. Mazen as its executive vice president and Mr. Willis as its corporate counsel, explaining that "Mr. Willis advises Mr. Mazen on legal proceedings." WPH contended that if Mr. Willis had known about the default and default judgment "he would have instructed [WPH] to retain new counsel immediately."

Seemingly arguing that Mr. Mazen's efforts to find an attorney who would take the case on a contingency distracted him from the urgency of the matter, WPH alleged that Mr. Mazen "did not understand the urgency of retaining new counsel."

9

On the one hand, WPH suggested that it was not informed that the court set a deadline to retain counsel. On the other hand, it argued that by filing "a motion with this Court requesting additional time to retain counsel," Mr. Mazen "illustrat[ed] [WPH]'s willingness to cooperate with this Court's Order."

On May 30, 2024, the court heard the motion to set aside and the motion to stay. Again, the record does not include a transcript of that proceeding. Still, the written order makes key details sufficiently clear. The court's ruling clearly contemplated that (1) WPH had been defaulted on two occasions in the same case, (2) WPH's counsel had been permitted to withdraw on the condition WPH retain counsel within 10 days, (3) WPH failed to comply, (4) WPH claimed to have contacted attorneys to handle the matter on a contingency fee basis but failed to identify the attorneys or firms it contacted, (5) Mr. Mazen, who is not an attorney, filed a motion to seek additional time to hire an attorney after the court entered the judicial default earlier in that morning, (6) WPH's affidavits "are not credible," and (7) WPH did not establish excusable neglect.

II.

In its initial brief WPH challenges the entry of two orders. First, it challenges the trial court's entry of the default final judgment, which it failed to timely appeal and did not include in its notice of appeal. Next it challenges the trial court's denial of WPH's motion to set aside on the basis of excusable neglect. Because WPH failed

10

to timely appeal the default final judgment, it is precluded from now challenging the merits of that decision. *Bland v. Mitchell*, 245 So. 2d 47, 48 (Fla. 1970) (holding that "a denial (or granting) of a motion to vacate a final judgment cannot on appeal bring up for review the merits of the final judgment sought to be vacated"); *Averbuch v. Lauffer*, 516 So. 2d 973, 974 (Fla. 5th DCA 1987) ("Appellant's failure to pursue [a direct appeal] precludes this court, on review of an order denying a motion for relief from judgment, from reviewing questions that could have been decided on direct appeal"); *Phenion Dev. Grp., Inc. v. Love*, 940 So. 2d 1179, 1183 (Fla. 5th DCA 2006) ("Rule 1.540 was not intended as a substitute for relief from judicial error, 'such as a mistaken view of the law,' that should have been corrected by direct appeal or by motion under Florida Rule of Civil Procedure 1.530." (quoting *Curbelo v. Ullman*, 571 So. 2d 443, 445 (Fla. 1990))). Accordingly, we turn to the denial of the motion to set aside, which we review for abuse of discretion. *See Smith as Tr. for Lovely Fam. Tr., Dated March 29, 2013 v. Healy*, 372 So. 3d 750, 752 (Fla. 6th DCA 2023) (quotations omitted).

Florida Rule of Civil Procedure 1.540(b)(1) allows a party to file a motion for relief from judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." "The rule envisions an honest mistake made during the regular course of litigation, including those that result from oversight, neglect, or accident." *Paladin Props. v. Fam. Inv. Enters.*, 952 So. 2d 560, 562 (Fla. 2d DCA 2007). WPH argues

11

that the trial court abused its discretion in denying its motion to set aside on the basis of excusable neglect.

To have the trial court set aside the default final judgment, WPH had to prove by sworn evidence that (1) its failure to retain new counsel as ordered by the trial court was the result of excusable neglect, (2) its affirmative defenses and counterclaim established that it had meritorious defenses and claims warranting a trial on the merits, and (3) it acted with due diligence from the time when it learned of the default to the filing for relief. *Lazcar Int'l, Inc. v. Caraballo*, 957 So. 2d 1191, 1191 (Fla. 3d DCA 2007). WPH believes that it demonstrated excusable neglect through the sworn affidavits of WPH's executive vice president, Mark Mazen, which WPH argues "informed the trial court of WPH's efforts in engaging counsel."

But the trial court specifically found that the sworn affidavits submitted by WPH were not credible, the record provides ample evidence why the trial court would make that finding, and WPH provides no transcript of the hearing that took place before the trial court entered its order denying WPH's motion to set aside. "In appellate proceedings the decision of a trial court has the presumption of correctness, and the burden is on the appellant to demonstrate error." *Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979). In the order, the court rejected WPH's excusable neglect argument on the bases that WPH's allegations were unsupported and the affidavits were not credible. We decline to disturb these

12

findings on appeal. *See Southwin, Inc. v. Verde*, 806 So. 2d 586, 588 (Fla. 3d DCA 2002) ("Determinations regarding the weight of the evidence or the credibility of witnesses are peculiarly within the province of the finder of fact and will not be disturbed on appeal." (citations omitted)).

AFFIRMED.

NARDELLA and BROWNLEE, JJ., concur.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED. ANY MOTIONS FOR
REHEARING ARE DUE TEN DAYS AFTER THIS OPINION'S ISSUANCE.
ANY RESPONSES ARE DUE TEN DAYS LATER.

_____

MOE, A.G., Associate Judge, concurring specially, with opinion.

Ironically, it is WPH's failure to properly invoke our jurisdiction that prevents us from having a clean opportunity to reject the idea that the court lacked the authority to vindicate its own order. Yet the fact that we did not say it does not make it any less true. A trial court with jurisdiction over the parties and the subject matter has the inherent authority to vindicate its own orders and "protect the court from acts obstructing the administration of justice." *Levin, Middlebrooks, Mabie, Thomas Mayes & Mitchell, P.A. v. U.S. Fire Ins.*, 639 So. 2d 606, 608 (Fla. 1994).

Under Florida Rule of Civil Procedure 1.500(b), if notice of the application for default is given, a court may enter a default "[w]hen a party against whom

13

affirmative relief is sought has failed to plead or otherwise defend as provided by . . . any order of court . . . ." Considered in this light, if Rule 1.500 did not permit the entry of a default when a corporate defendant defied a court order directing the retention of counsel by a date certain, then it would be impossible for trial courts to carry out the work required by Rule 1.200 within the time standards established by Rule 2.250. *See* Fla. R. Civ. P. 1.200 (case management); Fla. R. Gen. Prac. & Jud. Admin. 2.250 (establishing presumptively reasonable time standards for completion of cases). Firing defense counsel would become common sense, if not the only logical litigation strategy, if a corporate defendant wished to avoid an otherwise-inevitable judgment.

The trial court logically applied Rule 1.500(b) to a failure to comply with a court order to retain counsel by a date certain. Because "[a] corporation must be represented by an attorney when it appears in the courts of the State of Florida," *Punta Gorda Pines Dev., Inc. v. Slack Excavating, Inc.*, 468 So. 2d 438, 439 (Fla. 2d DCA 1985), WPH could not "otherwise defend" the litigation without counsel. Consequently, the withdrawal of WPH's counsel had the effect of grinding litigation to a halt on the eve of trial, forcing a continuance, and further complicating the court's effort to timely conclude the litigation.

Additionally, the trial court rightly rejected the argument that the notice given to WPH was not "adequate." Consideration of the adequacy of notice in this case

14

accounts for context, facts, and circumstances. WPH voluntarily discharged its counsel on the eve of trial. Its counsel then argued that withdrawal was mandatory under the rules. In a document signed by Mr. Mazen on behalf of WPH, WPH consented to the withdrawal. WPH received notice of the hearing on the motion to withdraw, which took place more than a week after WPH discharged its counsel. Evidently, it elected not to attend. Two days after the hearing, its withdrawing counsel prepared the order granting the motion to withdraw, which directed WPH to secure new counsel and have new counsel appear within ten days. The written order prepared by WPH's withdrawing counsel identified both Mr. Willis and Mr. Mazen as two of the eight individuals to whom notices to WPH could be sent. The written order contained a warning that sanctions, including the striking of pleadings, may be entered if counsel did not enter an appearance for WPH during that time.

According to the certificate of service executed by the trial judge's judicial assistant, a copy of the written order granting the motion to withdraw was sent to all eight recipients designated by WPH to receive notices, including Mr. Willis and Mr. Mazen. Mr. Willis is listed on the certificate of service for the notice of the case management conference, which was scheduled within the time directed in the order granting the motion to withdraw. WPH had notice of the motion for default and motion for default judgment through Mr. Mazen.

15

WPH is correct that the various certificates of service did not consistently notice all individuals designated to receive notice for WPH in the order granting the motion to withdraw. Yet at every pertinent stage, certificates of service undeniably reflect that *at least one* of WPH's designees was served in the manner WPH specified. Under the circumstances, it simply cannot be said that WPH was left without notice of the application for default.

There is no reason for us to second-guess the trial court's finding that WPH's affidavits were not credible. Here too, context matters. WPH had already been defaulted once. Just as it did on the second occasion, WPH blamed the first default on an employee who claimed to be ignorant of his role in retaining counsel. When WPH was defaulted a second time, WPH argued it was not "properly" notified of the urgency to retain new counsel even though Mr. Mazen, WPH's executive vice president, attended the mediation, signed the consent to withdraw, and was included on the certificate of service for the order granting withdrawal.

In his affidavit, Mr. Willis alleged that he did not receive the notice of hearing for the case management conference. However, he was listed on the certificate of service for the hearing notice. He was listed on the certificate of service for the court's order directing that such a hearing be set. And the fact that Mr. Mazen appeared at the courthouse and moved to "reschedule"—on the very day of the case management conference, when nothing *but* the case management conference had

been scheduled—supports the court's determination that Mr. Willis's affidavit was not credible.

Meanwhile, WPH's own filings in connection with the motion to set aside the first default place it beyond doubt that, even all the way in Abu Dhabi, the owner of WPH was personally aware of this litigation and the need for WPH to be represented by counsel. Because WPH moved twice to set aside defaults and attached different affidavits, unexplained contradictions exist in WPH's description of its own corporate practices and procedures. Mr. Mazen's affidavit offered no logical reason why he could not have sought Mr. Willis's advice about the significance of a filing, whether Mr. Willis himself was served with that filing or not. Mr. Mazen was not the first employee of WPH to swear under oath that, due to his inexperience with the court system, he mistakenly thought that he could appear at the courthouse in person to request an extension of time. Nor was Mr. Mazen the first employee of WPH to testify that WPH was unaware of a default until the initial consultation with retained counsel. And in Mr. Mazen's case, that representation is plainly contradicted by the certificates of service in the record.

Considered in the context the record provides, there are other reasons to be skeptical of Mr. Mazen's affidavit. For example, Mr. Mazen avoided saying WPH was not notified of the deadline to retain counsel. Instead, in his affidavit he stated that he personally was not notified "*properly.*" Because Mr. Mazen does not address

17

the numerous certificates of service on which he is listed, a logical reading of his representation is that it is too clever by half. After all, the record establishes that he (1) attended the mediation as WPH's representative, (2) signed WPH's consent to the withdrawal of its attorneys, and (3) was included on the certificate of service of the order granting the motion to withdraw.

In another example of low-hanging fruit, it is obvious why Mr. Mazen's trip to the courthouse would engender skepticism. Mr. Mazen claimed he personally appeared at the courthouse on the very day that the case management conference was noticed. Mr. Mazen claimed WPH was unaware that the hearing was scheduled, even though Mr. Willis—who advises Mr. Mazen on legal proceedings, according to WPH—was listed in the certificate of service. Yet, despite WPH's allegedly being in the dark about the *only* event scheduled on the court's calendar at that time, on behalf of WPH Mr. Mazen asked the court to "reschedule." And, while Mr. Mazen claimed he was unaware of any urgency in the search for counsel, he requested more time to do that very thing. With examples like this, there is no reason to question the trial court's finding that Mr. Mazen's affidavit was not credible.

Turning to the order denying WPH's motion to set aside, there was no abuse of discretion. *See Smith as Tr. for Lovely Fam. Tr., Dated March 29, 2013 v. Healy*, 372 So. 3d 750, 752 (Fla. 6th DCA 2023) ("An order denying a motion to vacate a final judgment is reviewed for an abuse of discretion." (quoting *BoatFloat, LLC v.*

18

*Cent. Transp. Int'l, Inc.*, 941 So. 2d 1271, 1272 (Fla. 4th DCA 2006))). There is a "strong preference for lawsuits to be determined on the merits," *Smith*, 372 So. 3d at 752, and historically, ultimate sanctions of dismissal or default have been fairly described as severe sanctions that "should only be employed in extreme circumstances," *Commonwealth Fed. Sav. & Loan Ass'n v. Tubero*, 569 So. 2d 1271, 1272 (Fla. 1990). Yet what is "extreme" is subjective and dependent on context.

In *Commonwealth*, the Florida Supreme Court held that it was extreme for a trial court to dismiss the plaintiff's complaint based on a discovery violation after (1) the plaintiff failed to respond to discovery served by the defense two months after the complaint was filed, (2) the plaintiff did not request additional time, (3) the plaintiff's counsel moved to withdraw before the responses came due, (4) the record contained no indication that the plaintiff's counsel notified the plaintiff of the motion to withdraw or the related hearing, (5) the defendant submitted a proposed order granting a motion to compel on an *ex parte* basis, (6) the court granted the motion on an *ex parte* basis, (7) after the plaintiff did not respond to the discovery within ten days, the defendant moved for sanctions, and (8) the trial court made no express finding that the plaintiff had willfully disregarded the court's orders. 569 So. 2d at 1271–72.

While this case and *Commonwealth* both involve sanctions after counsel's withdrawal, the contrast is obvious. Here, (1) WPH fired its counsel on the eve of

19

trial, (2) because WPH fired its counsel, counsel argued that its withdrawal became mandatory, (3) the court continued the trial at WPH's request, (4) WPH was given an amount of time to secure new counsel that was reasonable under the circumstances, (5) certificates of service reflect that WPH was provided notice at every stage of the proceedings, (6) the court advised WPH of both the potential for sanctions and the potential severity of the sanctions, (7) the record is clear that WPH was afforded due process, (8) the court explicitly found WPH's affidavits not credible, (9) the court highlighted WPH's failure to support its arguments with facts, (10) this was the second instance in which WPH was defaulted due to an employee's failure to recognize the need to retain counsel, and (11) the affidavits WPH filed in connection with its efforts to set aside the two defaults made arguably contradictory representations about its corporate practices, with no explanation provided for the inconsistency.

Meanwhile, both the facts before the court and the decisional path of reasoning in *Commonwealth* suggest that the holding of that case is limited to sanctions for discovery violations. *See Pedroza v. State*, 291 So. 3d 541, 547 (Fla. 2020) (explaining that holding "consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment"). Indeed, WPH's initial brief cites *Ham v. Dunmire*, 891 So. 2d 492, 485 (Fla. 2004), but in that case the supreme

20

court's own reference to *Commonwealth* suggests that the holding is limited to the discovery context. *See id.* (citing *Commonwealth* for the proposition that "[t]he dismissal of an action *based on the violation of a discovery order* will constitute an abuse of discretion where the trial court fails to make express written findings of fact supporting the conclusion that the failure to obey the court order demonstrated willful or deliberate disregard" (emphasis added)).

Trial judges have a duty to afford litigants due process, but the phrase "due process" does not imply one-size-fits-all. Due process is an adjective (due) that modifies a noun (process). Consideration of what process is "due" necessarily requires consideration of context and circumstances. *See, e.g.*, Thomas M. Cooley, *A Treatise on the Constitutional Limitations* 356 (1868) ("Due process of law in each particular case means, such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.").

Here, in addition to the circumstances visible in the record, the contextual analysis of due process compels recognition of the Florida Supreme Court's authority to establish judicial policy in the state. Pursuant to that authority, the supreme court now requires trial judges to actively manage cases, set deadlines, and enforce them. *See generally In re Amends. to Fla. R. Civ. P.*, 386 So. 3d 497 (Fla.

21

2024) (amending Florida Rule of Civil Procedure 1.200 "to codify active case management" and discussing the development of the Court's judicial policy regarding case management, including the establishment of case management requirements by administrative order during the COVID-19 pandemic).

The supreme court has expressed the importance of enhanced case management "in order to deliver justice in a timely, cost-efficient, and accountable manner while maintaining due process." *Id.* at 499 (quoting *In re Workgroup on Improved Resol. of Civil Cases*, Admin. Order No. AOSC19-73 (Fla. Oct. 31, 2019)). Since 2021,[5] the supreme court has required trial judges to comply with "detailed procedure[s]" for case management. *Id.* at 500. Deadlines "must be strictly enforced" in that process. *Id.* In light of this, a trial judge's duty to afford litigants due process plainly does not require—or for that matter, even permit—a trial judge to abdicate control of the case to any litigant. Nor does due process require trial judges to grant every request, no matter how objectively unreasonable.

---

[5] Effective April 30, 2021, every circuit court in Florida was required to actively manage civil cases in a specific manner prescribed, which included strict compliance with Florida Rule of General Practice and Judicial Administration 2.545(a), (b), and (c), "which respectively require judges to conclude litigation as soon as it is reasonably and justly possible to do so, to take charge of all cases at an early stage and to control the progress of the case thereafter until it is determined, and to apply a firm continuance policy allowing continuances only for good cause shown." *See In re: Comprehensive COVID-19 Emergency Measures for Fla. Trial Courts*, Admin. Order No. AOSC 20-23, Amend. 12, § III(G) (Fla. Apr. 13, 2021).

A fair reading of *Commonwealth* is that its holding was limited to discovery violations, but it is not necessary for us to resolve that today. Even if it applies here, *Commonwealth* does not require "magic words." 569 So. 2d at 1273 ("We hasten to add that no 'magic words' are required . . . ."). What *Commonwealth* requires is findings by the trial judge that are "equivalent to willfulness or deliberate disregard." *Id.* In the context of this case, the affidavits the court deemed "not credible" alleged that "[a]ny failures to engage new counsel by the deadlines set forth by this Honorable Court were not intentional, willful, or done with the intent not to comply with this Court's Order(s)." This was sufficiently "equivalent to" a finding that WPH willfully or deliberately disregarded its order.

_____

Robert Chapman and Richard Perez, of Brick Business Law, P.A., Tampa, for Appellant.

Richard Sierra, of Legal Counsel, P.A., Winter Garden, for Appellee.